**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NATHANAEL M. NYAMEKYE, | ) | |
| | ) | Civil Action No. 22 – 240J |
| *Petitioner*, | ) | |
| | ) | District Judge Stephanie L. Haines |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| LEMAR ODDO, *Warden of MVPC*., | ) | |
| | ) | |
| *Respondent*. | ) | |

**REPORT AND RECOMMENDATION**

## I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Petition for Writ of Habeas Corpus (ECF No. 1) be granted. It is further recommended that the Motion for Temporary Restraining Order (ECF No. 8) be dismissed as moot and/or denied as to the specific relief requested.

## II. REPORT

Petitioner Nathanael M. Nyamekye ("Petitioner") is currently under the custody of the U.S. Immigration and Customs Enforcement ("ICE") of the Department of Homeland Security ("DHS") and detained at the Moshannon Valley Processing Center ("MVPC") located in Phillipsburg, Pennsylvania. He has filed a Petition for Writ of Habeas Corpus ("Petition") seeking a bond hearing. *See* ECF No. 1. He has also filed a Motion for Temporary Restraining Order ("TRO") seeking immediate release from detention pending the conclusion of his immigration proceedings. *See* ECF No. 8.

### A. Background

Petitioner is a native and citizen of Ghana who was admitted to the United States as a visitor in 2008 and became a permanent resident in 2012. (ECF No. 10, p.2.)

#### 1. Petitioner's criminal history and immigration proceedings

On May 29, 2020, Petitioner was convicted in the United States District Court for the Western District of Pennsylvania of Conspiracy to Commit Money Laundering and Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity in violation of 18 U.S.C. §§ 1956(h), 1957(a), 1957(b)(1), and 1957(b)(2). (ECF No. 10, p.2.)

Petitioner alleges that he was taken into ICE custody on January 30, 2022. (ECF No. 1, ¶ 11.) DHS initiated removal proceedings against Petitioner pursuant to the filing of a Notice to Appear ("NTA") issued on January 31, 2022. (ECF No. 10, p.2); *see also* (ECF No. 10-2.) The NTA advised Petitioner that he was subject to removal under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), because he was convicted of an aggravated felony as defined in Section 101(a)(43)(D) of the INA. (ECF No. 10-2.) The NTA also included a Notice of Custody Determination advising Petitioner that, pursuant to Section 236 of the INA, he would be detained by DHS pending a final administrative determination in his case. Id.

Petitioner applied to adjust his status and applied for asylum and withholding of removal. The Immigration Judge held a hearing on Petitioner's application on September 15, 2022. (ECF No. 10, p.3.) Petitioner and his wife testified at the hearing, and the Immigration Judge thereafter issued an order on September 23, 2022, denying the application and deeming Petitioner removable under Section 237(a)(2)(A)(ii) of the INA, which governs persons deportable for committing an aggravated felony. Id. On January 4, 2023, Petitioner moved to reopen his removal proceedings, which the Immigration Judge construed as a motion for

reconsideration of the order issued on September 23, 2022. Id. On January 9, 2023, the Immigration Judge denied the motion finding that it was untimely and that it did not establish that the initial decision had any factual or legal errors. Id.

The Immigration Judge conducted a hearing on Petitioner's asylum request on January 11, 2023. Id., p.3. Petitioner and his wife testified and presented documentary evidence in support of his request. Id. On January 19, 2023, the Immigration Judge denied Petitioner's application for adjustment of status, application for asylum and request for withholding of removal and ordered Petitioner be removed from the United States to Ghana. Id. Petitioner appealed the Immigration Judge's decision to the Board of Immigration Appeals. Id., p.4. His appeal currently remains pending.

**2. Petitioner's Habeas Petition and Motion for TRO**

The Petition in this case was filed on December 9, 2022. Petitioner alleges that the Government is violating his due process rights by detaining him for an unreasonable amount of time without conducting a hearing at which he would have the opportunity to be released on bond. (ECF No. 1.) On February 21, 2023, Petitioner filed a Motion for TRO asking the Court to order his immediate release from detention during the pendency of his immigration proceedings. (ECF No. 8.) Respondent filed Responses to both the Petition and Motion for TRO on March 7, 2023. (ECF Nos. 10 & 11.) Petitioner recently retained counsel in this case who, on March 9, 2023, filed Declarations in support of the Petition by Petitioner, his wife, his sister, and his immigration attorney. (ECF No. 12.) Petitioner's Declaration provides details on his conviction, detention by ICE, Order of Removal, family life, health concerns and plans if released. Id.

**B. Discussion**

Under 28 U.S.C. § 2241, a federal court has jurisdiction over a petition seeking habeas relief if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488 (1989). With respect to aliens who are detained pending removal, this statute grants federal courts the authority to decide whether their detention is, or is not, pursuant to statutory and constitutional authority. *See* Zadvydas v. Davis, 533 U.S. 678, 688 (2001) (concluding that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

The Government derives its authority to detain removable aliens from two different statutes: 8 U.S.C. § 1226 and 8 U.S.C. § 1231. Each statute allows the Government to detain an individual depending on if the individual is awaiting a final order of removal, or if an individual has been ordered removed. Section 1226 detention permits the Government to detain individuals who have not received an administratively final order of removal. [1] That provision distinguishes between two different categories of aliens, those detained under § 1226(a) and those detained under § 1226(c). "[A]n alien detained under § 1226(a) must be afforded a bond hearing before an immigration judge to determine if the alien's detention is necessary while he or she awaits immigration proceedings." Guerrero-Sanchez v. Warden York Cty. Prison, 905 F.3d 208, 214 (3d Cir. 2018). In contrast, § 1226(c) provides for mandatory detention of, among others, aliens convicted of certain crimes. 8 U.S.C. § 1226(c)(1)(B). Section 1226(c) "mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." Jennings v.

[1] As of the date of this Report and Recommendation, Petitioner is detained under section 1226 because he has not received a final order of removal. *See* 8 CFR § 1241.1 (setting forth when an order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the INA becomes final).

Rodriguez, 138 S. Ct. 830, 847 (2018). As a result of Petitioner's federal conviction, he is subject to mandatory detention pursuant to Section 1226(c). Petitioner has now been detained without a bond hearing for approximately 14 months, and his immigration attorney has represented to the Court that a decision by the Board of Immigration Appeals will likely not come for at least six months and any appeal of that decision likely would not be resolved for at least two years. *See* ECF No. 12, ¶¶ 4-5.

The Third Circuit Court of Appeals recently held that aliens can still bring as-applied challenges to their detention under § 1226(c) despite the United States Supreme Court holding in Jennings that § 1226(c) does not limit the length of detention. In German Santos v. Warden Pike County Correctional Facility, 965 F.3d 203 (3d Cir. 2020), the Third Circuit stated that although Jennings abrogated the Third Circuit's construction of § 1226(c), "it left our framework for as-applied constitutional challenges intact." 965 F.3d at 208. Thus, it reaffirmed that "even after Jennings, an alien lawfully present but detained under § 1226(c) can still challenge his detention under the Due Process Clause[,]" and noted that "§ 1226(c) is unconstitutional when applied to detain an alien unreasonably long without a bond hearing." Id. at 210.

It is clear that Petitioner is not directly challenging the determination that his detention is mandatory under section 1226(c). Instead, Petitioner is challenging the constitutionality of that statute as it applies to the length of his detention. Specifically, he claims that the length of his detention has become unreasonable, and he claims that he faces considerably more time in custody given that he is pursuing his appellate rights.

"[W]hen detention becomes unreasonable, the Due Process Clause demands a hearing." German Santos, 965 F.3d at 210 (quoting Diop v. ICE/Homeland Sec., 656 F.3d 221, 233 (3d Cir. 2011)). Assessing what is reasonable is a "highly fact-specific" inquiry. Id. (citing Chavez-

Alvarez v. Warden York County Prison, 783 F.3d 469, 474 (3d Cir. 2015)). The Third Circuit has provided a nonexhaustive list of four factors to consider in assessing whether an alien's detention has grown unreasonable. These factors include (1) the duration of detention, (2) whether the detention is likely to continue, (3) the reasons for the delay, such as a detainee's request for continuances, and (4) whether the alien's conditions of confinement are "meaningfully different" from criminal punishment. German Santos, 965 F.3d at 211.

The Third Circuit has stated that the duration of detention is the most important factor. Id. However, it has declined to adopt a presumption of reasonableness or unreasonableness of any duration instead instructing courts to "evaluate duration along with all the other circumstances, including the[] three other factors." 965 F.3d at 211. While no particular number of months marks the border between constitutional and unconstitutional detention, some guidelines can be gleaned from the case law. Courts within this circuit have previously found detention for over one year weighs in favor of the petitioner. *See*, *e.g.*, Ordanny E.G. v. Ortiz, 2021 WL 2910741, at *3 (D.N.J. July 8, 2021) (16 months); Felix S. v. Decker, Civ. No. 20-1414, 2020 WL 1527982, at *4 (D.N.J. Mar. 31, 2020) (14 months); Charran R. v. Barr, Civ. No. 19-16070, 2020 WL 219872, at *4 (D.N.J. Jan. 14, 2020) (21 months); Malcolm A. H. v. Green, 403 F.Supp.3d 398, 402 (D.N.J. Aug. 7, 2019) (14 months); Oscar B. v. Warden, Essex County Correctional Facility, Civ. No. 18-11524, 2019 WL 1569822, at *3-4 (D.N.J. April 10, 2019) (16 months); Bah v. Doll, No. 3:18-CV-1409, 2018 WL 6733959, at *7-8 (M.D. Pa. Oct. 16, 2018) (14 months), *report and recommendation adopted*, 2018 WL 5829668 (M.D. Pa. Nov. 7, 2018); Pratt v. Doll, 3:17-CV-1020, 2018 WL 1965287, at *2-3 (M.D. Pa. Apr. 26, 2018) (14 months); Kleinauskaite v. Doll, 4:17-CV-02176, 2018 WL 6112482, at *12 (M.D. Pa. Oct. 9, 2018) (16 months), *report and recommendation adopted*, 2018 WL 6079544 (M.D. Pa. Nov. 21, 2018).

*But see*, Crooks v. Lowe, Civ. No. 18-47, 2018 WL 6649945, at *2 (M.D. Pa. Dec. 19, 2018) (alien's mandatory detention for approximately 18 months did not violate due process when "[d]uring that time period, his case has proceeded through the removal process at a reasonable pace and there is no indication in the record that the government has improperly or unreasonably delayed the proceedings."); Rosales v. Lowe, 1:18-cv-1302, 2018 WL 6650304, at *3 (M.D. Pa. Dec. 19, 2018) (same for alien detained for less than 15 months); Fernandez v. Lowe, 3:17-cv-2301, 2018 WL 3584697, at *5 (M.D. Pa. July 26, 2018) (same for alien detained for 15 months).

With respect to the second factor, whether the detention is likely to continue, the Third Circuit stated, "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." Id. (citing Chavez-Alvarez, 783 F.3d at 477-78.)

With respect to the third factor, the reasons for the delay, such as a detainee's request for continuances, the Third Circuit explained that courts should ask "whether either party made careless or bad-faith 'errors in the proceedings that cause[d] the unnecessary delay.'" Id. (citing Diop, 656 F.3d at 234.) However, courts should "not hold an alien's good-faith challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceedings." Id. (citing Chavez-Alvarez, 783 F.3d at 476-77.) Nor should courts "hold the agency's legal errors against the Government, unless there is evidence of carelessness or bad faith." Id. However, "detention under § 1226(c) can still grow unreasonable even if the Government handles the removal proceedings reasonably." Id.

Finally, with respect to the fourth factor, whether the alien's conditions of confinement are "meaningfully different" from criminal punishment, courts should be mindful that removal

proceedings are civil, not criminal, "[s]o if an alien's civil detention under § 1226(c) looks penal, that tilts the scales toward finding the detention unreasonable." Id. (citing Chavez-Alvarez, 783 F.3d at 478.) As the length of detention grows, so does the weight of this factor. Id.

Under this framework, the undersigned will assess Petitioner's detention.

As to the first and second factors, Petitioner has been detained for approximately 14 months. This period of detention exceeds the constitutionally suspect one-year threshold in Chavez-Alvarez, 783 F.3d at 477. Furthermore, Petitioner's appeal to the Board of Immigration Appeals is still pending, and even though it will be fully briefed any day, [2] Petitioner's detention is likely to continue for an undefined duration that is out of his control, and which, according to his attorney, could possibly be quite extensive pending any further appeal that may be necessary. While courts cannot "effectively punish" aliens for choosing to exercise their legal right to pursue all available avenues to combat their removal by rendering "the corresponding increase in time of detention [as] reasonable[,]" Leslie v. Attorney General of U.S., 678 F.3d 265, 271 (3d Cir. 2012), they must keep in mind that "the justifications for detention under § 1226(c) continue to be served, perhaps more than ever now that an order of removal has been entered, since an alien who has already been ordered removed has less to lose by fleeing while released on bond[,]" Coello-Udiel v. Doll, No. 3:17-CV-1414, 2018 WL 2198720, at *4 (M.D. Pa. May 14, 2018). Given that Petitioner has been detained for over a year and there is no evidence that he is pursuing his appeals in bad faith or for the purposes of delaying removal, the first two factors appear to weigh ever so slightly in Petitioner's favor.

As to the third factor, except for an untimely motion for reconsideration filed by Petitioner, it does not appear that the majority of Petitioner's detention is attributable to any bad

[2] Docket information for Petitioner's appeal indicates that the parties' briefs are due on March 28, 2023.

faith on the part of Petitioner or the Government. Petitioner does not argue that his case has progressed slower than the normal rate for non-citizens who request change in status and seek asylum after detention, or who file appeals of removal decisions. He similarly does not argue that the Government has acted unreasonably with respect to the timing of his immigration case. This factor thus remains neutral.

As to the fourth factor, Petitioner states that the conditions of his detention at MVPC have been "substantially the same or worse" than the conditions he experienced while serving his federal prison sentence. (ECF No. 12, p.6.) While he does not address those conditions in his Petition, he discusses them in his Motion for TRO and briefly so in his Declaration in Support of his Petition. He states that he is "housed in a pool of detainees of about 60 people" in a "dorm, with open shared space for sitting, cooking, and shared bath and toilet areas." (ECF No. 8, p.3.) He claims that this environment "does not promote good hyg[i]ene or sanitation," and he lives in constant fear of exposure to viruses such as Covid, HIV and herpes. Id. He states that Covid has been "an ongoing and persistent issue" at MVPC and he is at heightened risk of dying if he contracts the virus because he has asthma. Id.; *see also* (ECF No. 12, p.7.)

Respondent correctly notes that Petitioner is not detained alongside convicted criminals. Instead, he is housed in a privately owned and operated immigration processing center that houses only immigration detainees. *See generally*, https://www.geogroup.com/FacilityDetail/FacilityID/67 (last visited March 27, 2023). These detainees have access to telephone and video call capabilities, as Petitioner himself admits. Petitioner's allegations about the conditions of his confinement mainly concern the risks he faces of contracting Covid, and other viruses, given the group like setting. However, this does not suffice to make his conditions "prison-like" or "punitive." There is an inherent risk of the same

exposure to Covid and other viruses in any public or private place where people are present and are particularly in close contact with others, including schools and places of work. Furthermore, Petitioner admits that symptomatic detainees, as well as detainees initially entering the facility, are quarantined and isolated. Because Petitioner has not demonstrated that his detention is indistinguishable from criminal punishment, the undersigned finds that this factor favors Respondent.

In sum, the undersigned finds that the four factors appear to weigh, ever so slightly, in Petitioner's favor. Given the length of Petitioner's detention and the circumstances presented, detention without at least a bond hearing would exceed the bounds of due process under the Fifth Amendment in that it would constitute an unconstitutional application of section 1226(c) to Petitioner's particular case. The Court should therefore direct the Government to provide Petitioner with a bond hearing before an immigration judge within an appropriate amount of time, where the Government bears the burden of proof to justify detention by clear and convincing evidence. *See* German-Santos, 965 F.3d at 213 ("We have already held that the Government bears the burden of proof. That burden, we now hold, is to justify detention by clear and convincing evidence.").

If the District Judge adopts this Report and Recommendation, the undersigned recommends that Petitioner's Motion for TRO be dismissed as moot or otherwise denied as to the specific relief requested therein. In his Motion, Petitioner specifically requests that this Court order his immediate release pending the conclusion of his immigration proceedings. While the immigration court has the authority to hold an initial bond hearing, 8 CFR § 1003.19, Petitioner cites no authority allowing a district court to order the relief requested, nor is the undersigned aware of any such authority. *See* 8 U.S.C. § 1226(e) ("No court may set aside any action or

decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."); *see also* Davis v. Warden of Pike County Correctional Facility, 4:22-CV-0020, 2022 WL 4391686, at *4 (M.D. Pa. Aug. 18, 2022) ("The only remedy for an alien challenging their mandatory detention is a bond hearing.").

## III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Petition for Writ of Habeas Corpus (ECF No. 1) be granted. It is further recommended that the Motion for Temporary Restraining Order (ECF No. 8) be dismissed as moot and/or denied as to the specific relief requested.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, Petitioner shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. The failure to file timely objections will constitute a waiver of appellate rights.

Dated: March 28, 2023

Lisa Pupo Lenihan
United States Magistrate Judge

Cc: Counsel of record
(Via CM/ECF electronic mail)